Adolph Frater, Appellant, v. S. S. Kresge Co.

Argued March 5, 1929.

Before TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*R. L. Levy,* and with him *James Gardner Sanderson,* for appellant.—It was the duty of landlord to provide a safe stairway for the use of the tenants: Lewin v. Pauli, 19 Pa. Superior Ct. 447. Judgment n. o. v. was improperly entered: Chapman v. Clothier, 274 Pa. 396, and Brace v. Kirby, 43 Pa. Superior Ct. 392.

*Walter W. Harris,* of *Knapp, O'Malley, Hill & Harris,* for appellee.—There was no evidence of negligence on the part of defendant: Spickernagle v. Woolworth, 236 Pa. 496; Kline v. Kratchman, 87 Pa. Superior Ct. 463; Thompson v. Refowich, 85 Pa. Superior Ct. 248; Brocious v. Hill, 294 Pa. 280.

OPINION BY CUNNINGHAM, J., April 10, 1929:

For more than five years prior to the accident which gave rise to this action of trespass, the defendant corporation had a three-story mercantile building at Nos. 415 and 417 Lackawanna Avenue in the City of Scranton. Defendant occupied the first floor with its own store and the second was leased by it for business purposes to one Hinerfeld, who, with its knowledge and consent, sublet two rooms to plaintiff engaged in the business of selling and repairing sewing machines. A part of the third floor was used by defendant for storage purposes and the remainder leased to a tenant. The only access to the rooms on the second and third floors was by means of a stairway from Lackawanna Avenue with a landing and hallway on the second floor.

About nine o'clock on the morning of February 14, 1927, plaintiff left his office on the second floor for the purpose of attending to business matters in the city. After passing through the hallway and when about to descend the stairs his heel caught on the edge of a linoleum mat, placed by defendant on the landing at the top of the first flight, and he suffered serious personal injuries through falling about half way down the stairs. Alleging that his fall was caused by the negligence of the defendant in failing to keep the mat at the top of the stairway in reasonably safe repair and condition for use, plaintiff sought by this action to recover damages. At the conclusion of the testimony defendant's point for binding instructions was refused by the learned trial judge and the questions of its negligence and plaintiff's alleged contributory negligence were submitted to the jury in a charge concerning which no complaint is made. The jury returned a verdict in favor of the plaintiff for $850, but the court below, citing Chapman et ux. v. Clothier et al., 274 Pa. 394, and Brace v. Kirby, 43 Pa. Superior Ct. 389, entered judgment in favor of the defendant, notwithstanding the verdict, upon the ground that the evidence for plaintiff was not sufficient to support the finding by the jury that defendant had been guilty of negligence. From this disposition of the case plaintiff has appealed.

The negligence alleged in the statement was that for several years defendant "negligently, carelessly and unlawfully maintained, on the landing at the top of said stairway, a strip or mat of heavy linoleum bound with tin and tacked or nailed to the floor in such a manner as to permit the edges thereof to become partially loose, making passage thereover dangerous and unsafe," and "permitted the heavy edges to curl," with the result that "plaintiff caught his heel on one of them in such a manner as to throw

him violently headlong down the stairway." The learned counsel for defendant, in addition to arguing that there was no evidence from which a jury should be permitted to draw an inference of negligence against their client, contend that "the burden of caring for the mat was placed on the appellant as much as on the appellee" and that appellant was guilty of contributory negligence. We need not stop to consider the last mentioned contentions. The jury acquitted appellant of contributory negligence and the court below entered judgment in favor of the defendant on the sole ground of the lack of sufficient evidence of its negligence.

The responsibility for the proper maintenance of the stairway, landing and mat rested solely upon the defendant and the measure of its duty is clear. We have here a case in which defendant, as landlord, rented certain upper portions of its building to different tenants and, as a means of ingress and egress for them, their sub-tenants and customers, furnished a stairway and landing for their and its common use. Plaintiff had a right of passage, together with defendant and the other tenants, over the landing and staircase, which were not included in his lease for the rooms occupied by him. The landing upon which the mat was placed was under the control of the defendant and upon it was imposed the duty of exercising reasonable care in keeping it in suitable repair and condition for use in safety by appellant and others lawfully using the same: Lewin v. Pauli, 19 Pa. Superior Ct. 447, and cases there cited. The only question properly involved upon this appeal is whether there was evidence to sustain the finding of the jury. Under the circumstances, the testimony must not only be read in the light most advantageous to the plaintiff, any conflicts therein being resolved in his favor, but he must be given the benefit of every fact and inference of

fact pertaining to the issues involved which may reasonably be deduced from the evidence: Uhler v. Jones, 78 Pa. Superior Ct. 313, 315; Dunbar v. Preston et al., 285 Pa. 502.

There were no witnesses to the accident, but plaintiff's account reads: "....... and as I went down towards the hallway, the first landing, my foot caught in this mat, and I was trying to get hold of the top of the landing and was twisted around, and I fell down about the middle of the stairs, I would say about ten or twelve stairs, and the next thing I knew I was laying on the floor of the stairs again. I became unconscious. ....... Q. Do you know what the condition of the edges of this mat was when your foot caught in it? A. I do not. Q. What caught, your toe or heel or what? A. My heel. Q. Do you know whether or not the mat was solidly tacked down at that time? A. I couldn't tell. Q. All you know is that you went over the mat and your heel caught somewhere in it and threw you down the stairs? A. Yes, sir." There was evidence from which the jury could fairly find that when the plaintiff became a tenant in the building there was a metal strip on the landing at the top of the stairway which became loose through use and over which several people tripped. Upon complaint by Hinerfeld to the representatives of defendant this metal strip was removed and the mat installed in its place approximately two years before the accident. The material of the mat, described as battleship linoleum, was about a quarter of an inch thick. Upon four or five different occasions after its installation and before the accident the mat worked loose, with the result that the edges rose, or, in the language of some of the witnesses, "curled" up above the floor. Upon notice from Hinerfeld, the representatives of defendant upon each occasion endeavored to correct the condition. A portion of the testimony of a janitor em-

ployed by Hinerfeld reads: "Q. What can you tell us about what, if anything, while you were working for Mr. Hinerfeld, happened at any time to the edges of that mat? A. It came up, it stuck up. Q. Why? A. It wasn't properly nailed down. Q. Which edge stuck up? A. The edge as you come down. Q. The rear edge? A. Yes. Q. The edge that you would strike first as you went downstairs? A. Yes. Q. About how high would that curl up when it became loose? A. I suppose about quarter of an inch. Q. About how many times, so far as your knowledge goes, did those nails come out and the mat curl up before the accident? A. Four or five times, because I swept them stairs down every day, and I notified the girl about three or four times about it, I said 'Someone is going to hurt themselves.' Q. You notified who? A. I notified the girl in the office. Q. These various times, five or six times you have testified to that this mat became loose and curled up, what happened afterwards, was it fixed? A. They would fix it but they wouldn't put heavy enough tacks in it, they wouldn't nail it down properly. ...... Q. What can you tell us, if anything, about the condition of this mat as to whether or not it curled up for a period of two or three days before this accident? A. That is what I am telling you, that it curled up, and I notified them about it a couple of times, but I don't know whether it was two or three days, the exact time Q. You didn't notice the mat just before the accident? A. No, I didn't notice it at all." An examination shortly after the accident disclosed that "the rear edge of the mat was curled up" about half an inch and that some of the nails were out. In the light of this evidence we cannot agree with the court below. Under it we think the jury was justified in concluding that defendant had been negligent in the performance of its duty to maintain this landing in reasonably safe

condition and that its negligence was the cause of plaintiff's injuries. The testimony which we have quoted shows that defendant had notice upon at least four occasions within the two years preceding the accident that its method of installing the mat was not an ordinarily safe and prudent one, and that there was constant danger that tacks or nails of the size it used would work loose and permit the edges of the mat to extend a sufficient distance above the floor to trip persons about to descend the stairway. In our opinion, this knowledge upon the part of the defendant and its repeated, but evidently unsuccessful, efforts to remedy the condition distinguish this case from the authorities relied upon by the learned trial judge and by counsel for defendant. In Brace v. Kirby, supra, plaintiff fell while descending a stairway which connected the first and second floors of a department store. She testified that she saw no obstruction on the step and was unable to state what caused her fall. There was evidence that the steps were constructed with metal strip plates held in place by screws and that one of these plates was slightly raised above the level of the step. There was no evidence that the stairway was faulty in construction or that any notice was ever given to the proprietors of the store, or any of their servants, that one of the plates had become loosened. In Chapman et ux. v. Clothier, supra, plaintiff was injured while descending a flight of five marble steps in defendants' department store and averred that the fall was caused by her foot sliding into a depression three or four inches in diameter worn in the third step. The evidence, however, failed to disclose any depression exceeding one-sixteenth of an inch in depth. In holding that defendants' request for binding instructions should have been granted, our Supreme Court said: "The steps were of American marble, properly constructed and in perfect condition,

except slightly worn, and to hold defendants liable for this unfortunate accident would practically be to render the storekeeper an insurer of the safety of his customers, which he is not."

Having reached the conclusion that there was sufficient evidence to support the verdict the assignment to the entering of judgment for defendant must be sustained.

The judgment is reversed and is here entered in favor of appellant upon the verdict.